FILED
DES MOINES, IOWA

2002 JAN -3 PM 4:10

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| IOWA PROTECTION AND ADVOCACY SERVICES, INC. | ) ) ) | NO. |
| Plaintiff, | ) ) | **4:02-CV-90004** |
| v. | ) ) | |
| JESSIE K. RASMUSSEN, DIRECTOR IOWA DEPARTMENT OF HUMAN SERVICES, MICHAEL J. DAVIS, SUPERINTENDENT OF WOODWARD RESOURCE CENTER, KEVIN TECHAU, DIRECTOR IOWA DEPARTMENT OF INSPECTIONS AND APPEALS, MARVIN TOOMAN, ADMINISTRATOR, IOWA DEPARTMENT OF INSPECTIONS AND APPEALS. | ) ) ) ) ) ) ) ) ) ) ) ) | COMPLAINT AND REQUEST FOR A PRELIMINARY INJUNCTION AND OTHER INJUNCTIVE AND DECLARATORY RELIEF<br><br>EXPEDITED HEARING REQUESTED ON PRELIMINARY INJUNCTION |
| Defendants. | ) ) | |

COMES NOW Plaintiff Iowa Protection and Advocacy Services, Inc., and for its Petition

against Defendants Jessie K. Rasmussen, Michael J. Davis, Kevin Techau, and Marvin Tooman

hereby states to the Court as follows:

**PRELIMINARY STATEMENT**

1.      Iowa Protection and Advocacy Services, Inc. (hereinafter "Iowa P & A") is a

private, non-profit Iowa corporation which provides protection and advocacy services to persons

with mental retardation and mental illness pursuant to the Developmental Disabilities Assistance

and Bill of Rights Act of 2000 (hereinafter "DD" Act), 42 U.S.C. section 15001, et seq., and the

Protection and Advocacy for Individuals with Mental Illness Act (hereinafter "PAIMI Act"), 42

U.S.C. section 10801, et seq.

Pleading #

#802423

2.     Jessie Rasmussen is the Director of the Iowa Department of Human Services (hereinafter "DHS"), which is located in Polk County, Des Moines, Iowa.

3.     The DHS is responsible for overseeing the activities at Woodward Resource Center (hereinafter "Woodward"), a state-run residential care facility serving persons with mental retardation, in Woodward, Boone County, Iowa.

4.     Dr. Michael Davis is the Superintendent for Woodward.

5.     Kevin Techau is the Director for the Department of Inspections and Appeals (hereinafter "DIA"), the State Agency which conducts death investigations for deaths occurring at Woodward. The DIA is located in Polk County, Des Moines, Iowa.

6.     Marvin Tooman, is an Administrator for the Department of Inspections and Appeals (hereinafter "DIA").

7.     This Court has jurisdiction over this case pursuant to 28 U.S.C. section 1331, federal question jurisdiction, and 28 U.S.C. section 1343, as this matter pertains to 42 U.S.C. section 1983, the DD Act, 42 U.S.C. section 15001, et seq., and the PAIMI Act, 42 U.S.C. section 10801, et seq.

8.     Venue is proper under 28 U.S.C. section 1391(b).

9.     Iowa P &A operates under a federal mandate to conduct abuse and neglect investigations pursuant to 42 U.S.C. section 10801 et seq. (2000), and 42 U.S.C. section 15001 et seq.

10.     The State of Iowa has designated Iowa P & A as an appropriate agency for conducting such independent investigations. See Exhibit "A" attached hereto and incorporated by this reference.

11. Under 42 U.S.C. section 10805 and 42 U.S.C. section 15043, Iowa P & A is afforded access to residents, records, and facilities in the State of Iowa in the case of an individual resident who has died.

12. Under 42 U.S.C. section 15043(a) Iowa P & A is authorized to investigate incidents of abuse and neglect of individuals with developmental disabilities if Iowa P & A determines there is probable cause to believe the health or safety of an individual is in serious and immediate jeopardy.

13. Pursuant to 42 U.S.C. section 15043(a), Iowa P & A is to have immediate access, not later than 24 hours after Iowa P & A makes a request for the records without consent from the other party.

14. Under 42 U.S.C. section 10805 Iowa P & A is authorized to investigate incidents of abuse and neglect of individuals with mental illness disabilities if Iowa P & A determines there is probable cause to believe the abuse or neglect occurred.

15. Iowa P & A is also authorized to investigate potential abuse and neglect under Iowa Code chapters 135B, 135C, and 135H.

16. The authorized investigations referred to in paragraphs 9 through 15, include access to a facility's staff and records relating to the purported victim, including but not limited to treatment plans, nursing and other staff progress notes, physician orders and progress notes; social history, medical history and physical, medication lists, and medication administration records, and incident reports; restraint and seclusion records, individual habilitation plans and behavior management programs; facility policies, procedures, directives and guidelines in effect that the time of the alleged incident; communication with the facility's staff relating to the

purported victim's treatment; access to all areas of the facility; access and communication with other residents; and access to other records and information necessary to complete the investigation.

## FACTS

17.     On or about March 18, 2001, Larry Tielebein, age 45, a resident of 109 Franklin at Woodward died of suffocation while being restrained by employees of Woodward. A copy of the pathology report issued in Mr. Tielebein's death is attached hereto as Exhibit "B" and incorporated by this reference.

18.     Mr. Tielebein is a person with developmental and mental illness disabilities within the meaning of 42 U.S.C. section 15002(8)(A) and 42 U.S.C. section 10802(4).

19.     On or about March 20, 2001, Iowa P & A received notice from the media that there had been a death at Woodward.

20.     Iowa P & A contacted Dr. Michael Davis, the Superintendent for Woodward regarding the reported death.

21.     Dr. Davis reported that Mr. Tielebein died while he was restrained.

22.     Dr. Davis indicated that he had obtained statements from employees and would be interviewing staff.

23.     Iowa P & A contacted the DIA to report the death and to inquire whether they were conducting an investigation.

24.     On or about March 21, 2001, Rhonda Bennett from DIA called and stated that someone from DIA would be sent out to investigate Mr. Tielebein's death.

25. On or about March 22, 2001, staff from Iowa P & A went to Woodward to investigate Mr. Tielebein's death.

26. The investigators from Iowa P & A presented Dr. Davis with a letter outlining Iowa P & A's federal authority to investigate Mr. Tielebein's death and a request for specific information. See Exhibit "C" attached hereto and incorporated by this reference.

27. Dr. Davis indicated that Iowa P & A staff could conduct interviews of residents and staff.

28. Most of the residents of 109 Franklin at Woodward have severe and profound mental retardation and could not assist with the investigation, and the other individuals who were interviewed did not witness the restraint and emergency measures.

29. The letter requested access to Woodward, its staff and records, including:

any and all records of Larry Tielebein and all other individuals placed within your facility including but not limited to treatment plans, nursing and other staff progress notes, physician orders and progress notes; social history, history and physical, medication lists and medication administrative records, and incident reports; restraint, seclusion records, individual habilitation plans, behavior management programs, Woodward Resource Center policies, procedures, directives and guidelines in effect at the time of death and subsequent to death, communication with Woodward Resource Center staff regarding Mr. Tielebein's treatment and death; access to all areas of the Woodward Resource Center; access to communication with other consumers at the Woodward Resource Center; and access to other records and information necessary to complete this investigation.

30. The medical examiner classified Mr. Tielebein's death as a homicide. See Exhibit "B".

31. On or about July 6, 2001, staff from Iowa P & A sent Davis a letter requesting a copy of the final report of the internal investigation into Mr. Tielebein's death. Exhibit "D" attached hereto and incorporated by this reference.

32.     That same day, staff from Iowa P & A contacted Ms. Bennett to request a copy of the DIA's report regarding Mr. Tielebein's death.

33.     Ms. Bennett stated that after conferring with the Iowa Attorney General's Office, she could produce the deficiencies noted by DIA and the corrective action plan to be implemented at Woodward, but that the report would not be produced because Iowa P & A is not on the approved list of individuals who can receive copies of unfounded adult abuse reports under Iowa Code section 235B.6.

34.     Iowa P & A received a report of two deficiencies found by DIA: (1) Woodward staff did not explain the risks involved with physical restrains properly to Mr. Tielebein's guardian prior to obtaining the signed consent for restraints; and (2) Mr. Tielebein's behavioral plan was not followed prior to implementing restraints, nor was there proper monitoring of Mr. Tielebein while he was restrained.

35.     On July 11, 2001, staff from Iowa P & A sent a letter requesting the complete DIA report to Melissa Biederman, Assistant Attorney General, and a copy to Rhonda Bennett. See Exhibit "E" attached hereto and incorporated by this reference.

36.     On July 23, 2001, Dr. Davis sent Iowa P & A a letter indicating that he would not provide Iowa P & A with a copy of the internal investigation at Woodward. See Exhibit "F" attached hereto and incorporated by this reference.

37.     Iowa P & A responded to Dr. Davis by sending a letter on July 30, 2001, requesting a copy of the internal investigation. See Exhibit "G" attached hereto and incorporated by this reference.

38. On September 4, 2001, Ms. Biederman sent a letter to Iowa P & A indicating that the complete DIA report would not be sent to Iowa P & A pursuant to Iowa Code section 353B.6. See Exhibit "H" attached hereto and incorporated by this reference.

39. On September 11, 2001, Iowa P & A sent a letter to Ms. Biederman, requesting access to the full DIA report regarding Mr. Tielebein's death, stating that Iowa Code section 353B.6 is preempted by federal law. See Exhibit "I" attached hereto and incorporated by this reference.

40. On September 13, 2001, Iowa P & A sent a letter to Gordon Allen, Deputy Attorney General, again requesting a copy of the internal investigation conducted at Woodward. See Exhibit "J" attached hereto and incorporated by this reference.

41. On October 4, 2001, Marvin Tooman, Administrator for the DIA sent a letter to Iowa P & A indicating that the full DIA report would not be produced as "[c]hapter 135C.17 contains an express limitation that requires DIA to cooperate with reasonable requests for information only 'as required by federal law and this chapter'", and stating that Iowa P & A must gather materials through its "own investigation". See Exhibit "K" attached hereto and incorporated by this reference.

42. On October 13, 2001, Iowa P & A sent a second letter to Mr. Allen requesting a copy of the internal investigation at Woodward. See Exhibit "L" attached hereto and incorporated by this reference.

43. On October 19, 2001, Iowa P & A sent a letter to Jessie Rasmussen, Executive Director of DHS requesting copies of the internal investigation completed at Woodward. See Exhibit "M" attached hereto and incorporated by this reference.

44. On November 19, 2001, Ms. Rasmussen sent a letter to Iowa P & A stating that internal investigation conducted at Woodward, known as the Randall Hines report would not be produced, as the documents were prepared for Gordon Allen in anticipation of litigation with the Department of Justice. See Exhibit "N" attached hereto and incorporated by this reference.

45. Prior to filing the instant Complaint, Iowa P & A made several attempts to seek informal resolution of this dispute.

46. Most recently, on or about December 14, 2001, Sally Cunningham, Deputy Director for Field Operations for DHS indicated DHS would produce a copy of the internal investigation done at Woodward.

47. As of this date, the report has not been produced.

## CAUSES OF ACTION

### VIOLATION OF 42 U.S.C. SECTION 1983

48. Iowa P & A restates and incorporates by this reference each allegation contained in paragraphs 1 through 47 as if fully set forth herein.

49. Defendants, operating under the color of state law, have violated 42 U.S.C. section 1983 by denying Iowa P & A rights secured by the PAIMI Act, 42 U.S.C. section 10801, et seq., and the DD Act, 42 U.S.C. section 15001, et seq. through their repeated refusals to grant Iowa P & A access to the records relating to Mr. Tielebein's death.

### DECLARATORY RELIEF

50. Iowa P & A requests that after notice and hearing, this Court enter a declaratory judgment that Defendants' policies, regulations, practices, and conduct of interfering with and

denying Iowa P & A proper and immediate access violate 42 U.S.C. section 1983, 42 U.S.C. section 10801, et seq., and 42 U.S.C. section 15001, et seq.

## INJUNCTIVE RELIEF

51.     Iowa P & A seeks a preliminary injunction, restraining Defendants from denying Iowa P & A full and immediate access to the records of the investigation of Mr. Tielebein's death.

52.     A preliminary injunction is warranted because:  (1) at trial, Iowa P & A is likely to prevail on the merits because both the DD Act and the PAIMI Act allow Iowa P & A to have access to the records at issue; (2) if Defendants are permitted to refuse access to the records, Iowa P & A and the public will suffer irreparable harm because Iowa P & A will be unable to comply with its federal mandate to timely investigate incidents of abuse and neglect within the state of Iowa; (3) the harm Iowa P & A will sustain if a preliminary injunction is not granted is greater than any potential harm the Defendants will sustain; and (4) the issuance of a preliminary injunction is in the public interest.

53.     Iowa P & A requests the Court order Defendants to provide it with immediate access to all documents prepared as part of the internal investigation at Woodward, and the full DIA report regarding Mr. Tielebein's death for inspection and copying.

54.     Iowa P & A also seeks a permanent injunction enjoining Defendants from denying Iowa P & A full and immediate access to the records of all individuals receiving services at Woodward if a complaint is received and/or probable cause exists to believe that abuse or neglect has occurred.

WHEREFORE, Plaintiff Iowa Protection and Advocacy Services, Inc. hereby requests the Court: (1) grant Plaintiff's request for a preliminary injunction enjoining Defendants from denying Plaintiff full and immediate access to the death investigation records of Larry Tielebein; (2) enter an order waiving of the security requirement under Federal Rule of Civil Procedure 65(c); (3) order Defendants to provide Iowa P & A with immediate access to all documents prepared as part of the internal investigation at Woodward, and the full DIA report regarding Mr. Tielebein's death for inspection and copying; (4) enter a declaratory judgment that Defendants' policies, procedures, practices and conduct of denying access violates Plaintiff's rights under 42 U.S.C. section 1983, 42 U.S.C. section 10801, et seq. and 42 U.S.C. section 15001, et seq.; (5) enter a permanent injunction enjoining Defendants from denying Iowa P & A full and immediate access to the records of all individuals receiving services at Woodward if a complaint is received and/or probable cause exists to believe that abuse or neglect has occurred; (6) award attorney fees, costs and expenses incurred by Plaintiff in this action pursuant to 42 U.S.C. section 1988; and (7) for any further relief the Court deems appropriate under the circumstances.

Sharon K. Malheiro
Heather L. Palmer
DAVIS, BROWN, KOEHN,
  SHORS & ROBERTS, P.C.
666 Walnut Street, Suite 2500
Des Moines, Iowa 50309-3993

ATTORNEYS FOR PLAINTIFF

Attachment 3

Department of Health and Human Services
Office of Human Development Services
Administration on Developmental Disabilities
200 Independence Avenue, S.W.
Washington, D.C.  20201

Suggested Format for Submittal of
Protection and Advocacy System Assurances

State        :  Iowa

P&A Agency:  Iowa Protection & Advocacy Services, Inc.

[ ]  Public Agency              [X]  Other   (Private Non-Profit)


P&A Agency                    Address where grant award
                             is to be mailed.
Address:  3015 Merle Hay Rd., Ste. 6   Address:   3015 Merle Hay Rd., Ste. 6
          Des Moines, IA 50310                    Des Moines, IA 50310

Telephone:    515/278-2502        Telephone:   515/278-2502


Chief Executive Officer    Date: April 29, 1991
          or
Designated State Official


Attachment A:  Protection and Advocacy
               System Assurances

EXHIBIT
A



**STATE OF**

# IOWA

THOMAS J. VILSACK
GOVERNOR

SALLY J. PEDERSON
LT. GOVERNOR

**REPORT OF AUTOPSY**

DEPARTMENT OF PUBLIC HEALTH
STEPHEN C. GLEASON, D.O., DIRECTOR

---

**CASE NO.:** 01SME060

**COUNTY:** Boone

**DECEDENT:** Larry Tielebein

**DATE/TIME:** March 19, 2001
8:30 a.m.

**PLACE:** Broadlawns Hospital Morgue

## PATHOLOGIC DIAGNOSES

I.     Compressional/Positional asphyxia.
    A. Petechiae of face, conjunctivae and tracheal mucosa.
    B. Unresponsiveness associated with physical restraint, history.

II.    Abrasions of head.

III.   Hemorrhage of tongue.

IV.    Neck injuries.
    A. Hemorrhage of anterior neck muscles.
    B. Hemorrhage of soft tissue adjacent to left carotid artery and posterior esophagus.

V.     Abrasions of upper extremities, minor.

VI.    Cardiomegaly (heart weight 540 grams).

VII.   Arteriosclerotic coronary vascular heart disease, moderate.

VIII.  Lymphocytic myocarditis.

IX.    Hepatic steatosis, moderate.

X.     Chronic hepatitis (drug induced).

XI.    Splenomegaly.

XII.   Emphysema, mild.

XIII.  Pulmonary congestion.

XIV.   Fibrous intestinal adhesions.

XV.    Scoliosis of thoracic spine, mild.

XVI.   Schizophrenia, clinical history.

XVII.  Osteophytes of 5th cervical anterior vertebral body.

**CAUSE OF DEATH:** Compressional/positional asphyxia.

Page 1 of 7

**EXHIBIT**

B

FAMILY & COMM. HEALTH
515-281-3931
FAX515-242-6384

HEALTH PROTECTION
515-281-8466
FAX 515-281-4529

PLANNING & ADMINISTRATION
515-281-8787
FAX515-281-4958

SUBSTANCE ABUSE & HEALTH PROMOTION
515-281-3641
FAX/515/281-4535

DIRECTOR'S OFFICE
515-281-5604
FAX/515-281-4958

JUL-19-2001   16:08                          5152426579

Page 2 of 7
Case No. 01SME060

**OTHER SIGNIFICANT:** Cardiomegaly, arteriosclerotic coronary vascular heart disease, lymphocytic myocarditis, schizophrenia, emphysema, neck trauma.

**MANNER OF DEATH:** Homicide.

**AUTHORIZATION:** John Cook, M.D., Boone County Medical Examiner.

**BODY IDENTIFIED BY:** Visually, Woodward state hospital staff.

**AUTOPSY TECHNICIAN:** Gayle Onnen.

**EVIDENCE:** 35 mm slides, video, femoral and heart blood, urine and vitreous for toxicology, blood stain card, thumb prints, tissue/histology.

## EXTERNAL EXAMINATION

The body is that of a well developed, well nourished, adult Caucasian, male who weighs 212 pounds, is 74 1/2 inches in height, and appears compatible with reported age of 45 years.

The body is received clad in a white long sleeve shirt, black pants, white brief underpants with brown stool soiling, two white socks and blue suspenders. Personal effects received with the body include $1.95 in coins and various papers and envelopes.

The body is identified by a typewritten label bearing "L Tielebein, 109FR" present on the right sock.

The body is cool to touch. Rigor mortis is fixed and present to an equal degree in all extremities. Unfixed purple livor mortis extends over the posterior surfaces of the body, except in areas exposed to pressure.

The scalp hair is black/gray and is approximately 1 inch in length over the crown with male frontal pattern baldness. The irides are brown. The pupils are bilaterally equal at 0.5 cm. The cornea are translucent. The sclerae are moderately congested. The conjunctivae have multiple red petechiae. There are two separate 1/2 by 1/2 inch areas of red petechiae on the paranasal areas of the cheeks bilaterally. The nose and ears are not unusual.

The decedent does not wear a mustache or beard. The teeth are natural and in good condition.

The thorax is well developed and symmetrical. The abdomen is flat. The anus and back are unremarkable. The penis is uncircumcised. The testes are bilaterally descended within the scrotum.

The upper and lower extremities are well developed and symmetrical, without absence of digits.

Identifying marks and scars include a 1 1/2 inch oblique linear white scar on the right aspect of the inferior chin, a 1 1/4 inch oblique linear white scar on the upper left chest, a 1/2 by 1/2 inch "X" shaped white scar on the upper right abdomen, a 1 by 1/2 oval white scar on the lateral right arm, a 1 1/2 inch oblique linear white scar on the mid-anterior right forearm, a 1/2 and a 1 1/2 inch oblique linear white scars on the posterior right hand, a 1 inch oblique linear white scar on the posterior left hand and a 3/4 inch horizontal linear white scar on the mid-anterior left thigh.

Evidence of medical intervention includes an oroendotracheal tube with the tip present in the trachea approximately 2 cm above the carina, 2 pacer pads on the chest, 2 electrocardiograph patches on the chest, an IV catheter in the left antecubital fossa with an associated 3/4 by 1/2 inch purple hematoma, a 4 1/2 by 2 1/2 inch oval red ring shaped abrasion and a 2 by 1/4 inch oblique brown abrasion on the left paramidline chest consistent with electrocardiac resuscitation.


## EVIDENCE OF INJURY


**HEAD:** On the left forehead above the left eyebrow is a 1 by 1/2 inch red abrasion. On the left temple is a 1/4 by 1/4 inch red abrasion. On the right forehead above the lateral right eyebrow is a 1/2 by 1/4 inch red abrasion. Inferior to the lateral canthus of the right eye is a 1/4 by 1/4 inch red abrasion. On the right paramidline posterior scalp is a 1/4 by 1/4 inch red abrasion. In the midline posterior scalp is a 2 by 2 inch red abrasion. There is a 1/2 by 1/2 inch area of intramuscular hemorrhage of the mid-lateral left tongue. There are no deep scalp hemorrhages, skull fractures or intracranial hemorrhages identified. The brain is without evidence of injury.

**NECK:** There is no apparent evidence of injury on the external surface of the neck. Internally there is a 3 by 1/2 by 1 inch area of intramuscular hemorrhage of the sternal head of the right sternocleidomastoid muscle. In the anterior aspect of the left anterior

scalene muscle is a 1/2 by 1/2 by 1/2 inch area of intramuscular hemorrhage. In the connective soft tissue immediately overlying the left carotid artery at the level of the thyroid cartilage (11 cm superior to the left clavicle) are two separate 1/8 by 1/8 inch areas of hemorrhage. In the connective soft tissue immediately deep to the posterior esophagus at the level of the thyroid cartilage is a 1 by 1 inch area of hemorrhage. There are multiple areas of mucosal hemorrhage in the epiglottic folds and on the dorsal surface of the epiglottis. In the tracheal mucosa are diffuse petechiae extending from the epiglottis to the carina. The most concentrated area of petechiae are immediately inferior to the vocal cords.

**UPPER EXTREMITIES:** On the left and right elbows are 1/2 by 1/2 inch red abrasions.

# INTERNAL EXAMINATION

**BODY CAVITIES:** There are mild fibrous adhesions involving the transverse colon. There are no abnormal collections of fluid in any of the body cavities. All body organs are present in normal and anatomic position. The subcutaneous fat layer of the abdominal wall is 3.5 cm thick.

**HEAD (CENTRAL NERVOUS SYSTEM):** The brain weighs 1460 grams. The dura mater and falx cerebri are intact, and the leptomeninges are thin and delicate. The cerebral hemispheres are symmetrical. The structures at the base of the brain, including cranial nerves and blood vessels, are intact and free of abnormality. After fixation sections through the cerebral hemispheres reveal no lesions within the cortex, subcortical white matter, or deep parenchyma of either hemisphere. The cerebral ventricles are of normal caliber. Sections through the brain stem and cerebellum are unremarkable. The spinal cord is not examined. (see neuropathology report)

**NECK:** Examination of the soft tissues, strap muscles and large vessels, reveals areas of intramuscular hemorrhages as previously noted. The hyoid bone and larynx are intact. The tongue has intramuscular hemorrhage as previously noted.

**CARDIOVASCULAR SYSTEM:** The heart weighs 540 grams. The pericardial surfaces are smooth, glistening, and unremarkable. The pericardial sac is free of significant fluid or adhesions. The coronary arteries arise normally and follow the usual distribution of a right dominant pattern. There is atherosclerotic coronary vascular disease of the left anterior descending and right coronary arteries. There is focal 60%



Page 5 of 7
Case No. 01SME060

luminal narrowing of the proximal left anterior descending coronary artery located 0.5 cm distal from the left main bifurcation. There is 10% diffuse luminal narrowing of the right coronary artery. The chambers of the heart are mildly dilated. The valves bear the usual size/position relationship and are unremarkable. The circumference of the cardiac valves are as follows: Tricuspid 12.0 cm, Pulmonary 8.0 cm, Mitral 12.0 cm, and Aortic 7.5 cm. The myocardium is dark red-brown, firm and unremarkable. The atrial and ventricular septa are intact. The thickness of the left ventricular lateral free wall is 1.8 cm, septum 1.8 cm, and right ventricle is 0.6 cm. The aorta and its major branches arise normally and follow the usual course with no significant atherosclerosis. The vena cava and its major tributaries return to the heart in the usual distribution and are unremarkable.

**RESPIRATORY SYSTEM:** The right and left lungs weigh 640 and 700 grams, respectively. The upper and lower airways are patent without identified gastric contents. There is mild tan mucus in the distal airways. The mucosal surfaces are smooth and yellow-tan. The pleural surfaces are smooth, glistening, and unremarkable. The pulmonary parenchyma is dark red-purple with mild emphysematous change evenly distributed through the parenchyma of both lungs. The pulmonary arteries are normally developed and patent.

**LIVER AND BILIARY SYSTEM:** The liver weighs 2350 grams. The hepatic capsule is smooth, glistening, and intact covering a tan parenchyma. The gallbladder contains viscid bile. The extrahepatic biliary tree is patent.

**ALIMENTARY TRACT:** The esophagus is lined by gray-white smooth mucosa. The gastric mucosa has flattening of the rugal folds, and the lumen contains 5 ml of thin brown fluid with partially digested food fragments consistent with corn. No pill fragments are identified. The small and large bowel are unremarkable. The appendix is present. The pancreas has a normal pink tan lobulated appearance, and the ducts are clear.

**GENITOURINARY TRACT:** The right and left kidneys weigh 180 and 232 grams, respectively. The renal capsules are smooth, thin, semitransparent, and strip with ease from the underlying, smooth, red-brown, firm, cortical surfaces. The cortices are sharply delineated from the underlying medullary pyramids. The calyces, pelves, and ureters are unremarkable. The urinary bladder contains 130 ml. of clear yellow urine; the mucosa is gray tan and slightly trabeculated. The prostate is slightly enlarged.

**RETICULOENDOTHELIAL SYSTEM:** The spleen weighs 520 grams and has a smooth intact dark red purple capsule covering a red-purple moderately firm parenchyma. The regional lymph nodes appear normal.

**ENDOCRINE SYSTEM:** The pituitary, thyroid, and adrenal glands are unremarkable.

**MUSCULOSKELETAL SYSTEM:** The bony framework is remarkable for slight scoliosis of the mid-thoracic spine. There are 1/2 by 1/4 inch osteophytes on the 5th cervical anterior vertebral body. The supporting musculature and other soft tissues are not unusual.

## OPINION

This 45 year old man, Larry Tielebein, died of compressional/positional asphyxia associated with physical restraint.

According to hospital employees, he was placed in a "three point" restraint for behavioral control. Reportedly within several minutes he was found to be unresponsive and cyanotic (blue). Resuscitation was initiated by hospital staff and later by paramedics. Cardiopulmonary resuscitation and intubation were performed. According to paramedics there was vomitus present in the airways at the time of intubation.

Autopsy revealed petechial hemorrhages of the conjunctivae of both eyes, on the face and in the mucosa of the upper airway. There were abrasions on the face, the head and the elbows. There were hemorrhages in the anterior neck muscles and soft tissue.

Internal examination revealed an enlarged heart with moderate narrowing of one of the coronary arteries which supply blood and oxygen to the heart, emphysema, a large spleen and a fatty liver.

Microscopic examination revealed inflammation in the heart (myocarditis) and chronic hepatitis (consistent with drug induced).

Toxicological analysis revealed a low concentration of risperidone in the blood and no detectable concentrations of alcohol or drugs of abuse. Based on the history that he had been physically restrained and the presence of petechial hemorrhages on the face and around the eyes, the cause of death is most consistent with compressional/positional asphyxia. In addition there was blunt force trauma to the anterior neck. The enlarged heart with narrowing of one of the coronary arteries, emphysema, myocarditis, schizophrenia and neck trauma were medical conditions that may have significantly contributed to the cause of death.

The primary cause of death (compressional/positional asphyxia) occurred during physical restraint by other individual(s), therefore, the manner of death is **HOMICIDE**.

Dennis F. Klein, M.D.
Deputy State Medical Examiner

DFK/kb

NAME LARRY TIEBBCEN CASE # 01SHED06 DATE 3-19-01



# MICROSCOPIC EXAMINATION

**Subject:** Tielebein, Larry

**Date:** May 2, 2001

**Case #:** 01SME060

Dennis F Klein MD
Iowa Deputy Chief Medical Examiner

**HEART:** Focus of interstitial chronic inflammation with a few necrotic myocytes. Atherosclerosis of left anterior descending coronary artery. A few focal areas of mild interstitial myocardial fibrosis.

**LUNGS:** Congestion. Focal interstitial chronic inflammation. Focus of bronchial mucosal squamous metaplasia. Scattered bacterial overgrowth.

**LIVER:** Mild to moderate macro and micro vesicular diffuse steatosis. Mild to moderate portal predominantly chronic inflammation with focal extension beyond the limiting plate. Mild to focally moderate portal fibrosis.

**SPLEEN:** No significant histopathology.

**PANCREAS:** No significant histopatholgy.

**KIDNEYS:** Focal mild interstitial chronic inflammation.

**RIGHT STERNOCLEIDOMASTOID MUSCLE :** Skeletal muscle with extensive acute hemorrhage.

**LEFT SCALENE MUSCLE :** Skeletal muscle with focal acute hemorrhage.

# IOWA PROTECTION AND ADVOCACY SERVICES, INC.

*Celebrating 15 years of service to
Iowans with disabilities.*

March 22, 2001

Attn: Dr. Michael Davis
Woodward Resource Center
1251 334th Street
Woodward, IA 50276

Dear Dr. Davis:

This letter hereby notifies you that Iowa Protection & Advocacy Services, Inc. is conducting an investigation of alleged abuse and/or neglect of a resident in your facility, which resulted in death.

Iowa Protection & Advocacy Services, Inc. authorizes Myron Zehr, Anita Puentes Stiller, and Nancy Trotter to conduct the investigation. The basis for the investigation is that Iowa Protection & Advocacy Services, Inc. has received information that gives this agency "probable cause" to believe that abuse and/or neglect of a resident led to his death while at the Woodward Resource Center as well as the agency's "probable cause" belief that all consumers within the Woodward Resource Center may be similarly affected by potential abusive or neglectful conditions.

Iowa Protection & Advocacy Services, Inc. has legal authority to conduct this investigation pursuant to: Iowa Code chapters 135B, 135C and 135H; 42 U.S.C § 10801 et. seq. and 42 U.S.C § 6042. The general nature of the alleged abuse and/or neglect is the death of Larry Tielebein as well as the safety, health and welfare of all other consumers in the Woodward Resource Center. At this time, the length of time of this investigation is unknown.

Access to the Woodward Resource Center, its staff and records are hereby requested as follows: any and all records of Larry Tielebein and all other individuals placed within your facility including but not limited to treatment plans, nursing and other staff progress notes, physician orders and progress notes; social history, history and physical, medication lists and medication administration records, and incident reports; restraint, seclusion records, individual habilitation plans, behavior management programs, Woodward Resource Center policies, procedures, directives and guidelines in effect at the time of death and subsequent to death, communication with Woodward Resource Center staff regarding Mr. Tielebein's treatment and death; access to all areas of the Woodward Resource Center; access and communication with other consumers at the Woodward Resource Center; and access to other records and information necessary to complete this investigation.

Thank you in advance for your anticipated cooperation.

Sincerely,

Sylvia W. Piper
Executive Director

Cc: Sharon Yon, Attorney-at-Law

3015 Merle Hay Road • Suite 6 • Des Moines, Iowa 50310-1270 • Telephone Number: 515-278-2502 • Toll Free: 1-800-779-2502
FAX: 515-278-0539 • TTY 515-278-0571 • E-Mail: info@ipna.org
*A federally-funded program to defend and promote the human and legal rights of Iowans who have disabi   s and mental illness.*


EXHIBIT

# IOWA PROTECTION AND ADVOCACY SERVICES, INC.

*Celebrating 15 years of service to*
*Iowans with disabilities.*

July 6, 2001

Michael Davis, Administrator
Woodward Resource Center
1251 334th St.
Woodward, IA 50276

Dear Mr. Davis,

I wanted to give you an update regarding Iowa Protection and Advocacy's investigation into the death of Larry Teilebein. We continue with our investigation, at this point, and are awaiting final reports from other entities involved with the death investigation, before making our final conclusion and/or recommendations. I, along with fellow P&A Advocate, Myron Zehr, are currently working on this investigation, having replaced Anita Puentes-Stiller, whom is no longer with P&A.

We would appreciate an update from you on the status of your internal investigation into Larry's death. If your final report has been completed, I am requesting a copy of that report for our records and investigation. Please send as soon as possible to my attention at the address below.

Please call either myself or Myron, if you have any questions, at 515-278-2502. Thanks for your cooperation!

Sincerely,

Nancy Gilbert
Case Advocate

3015 Merle Hay Road • Suite 6 • Des Moines, Iowa 50310-1270 • Telephone Number: 515-278-2502 • Toll Free: 1-800-779-2502
FAX: 515-278-0539 • TTY 515-278-0571 • E-Mail: info@ipna.org
*A federally-funded program to defend and promote the human and legal rights of Iowans who have disabilities and mental illness.*

**EXHIBIT**
D

# IOWA PROTECTION AND ADVOCACY SERVICES, INC.

*Celebrating 15 years of service to
Iowans with disabilities.*

July 11, 2001

Melissa Biederman
Assistant Attorney General
Iowa Attorney General's Office
1305 E. Walnut
Des Moines, IA 50319

Dear Ms. Biederman,

Iowa Protection & Advocacy Services, Inc. (Iowa P&A) is a private non-profit organization with federal authority to provide advocacy services to persons with developmental disabilities, mental illnesses, and non-developmental disabilities. Our advocacy functions include, but are not limited to, investigating incidents of abuse/neglect towards individuals with disabilities, and investigating deaths of individuals with disabilities residing in institutions/facilities in Iowa.

We are currently conducting an investigation into the death of Larry Tielebein, late resident of Woodward Resource Center, which occurred on 3/18/01. On 7/6/01, we requested the entire investigative report completed by the Iowa Department of Inspections and Appeals regarding Mr. Tielebein's death, from Ronda Bennett, the author of said report. Ronda informed us that she is authorized, per your instructions, to only release to Iowa P&A the DIA report identifying Deficiencies found in the course of her investigation and the Provider's Plan of Correction regarding those deficiencies. She stated she is not authorized to release to Iowa P&A the Comprehensive Abuse Memo and other information/reports pertaining to the dependent adult abuse incident(s) investigated by DIA concerning Mr. Tielebein.

We are requesting immediate access to and receipt of the entire investigative report completed by DIA, including the Comprehensive Abuse Memo, and all information/reports pertaining to DIA's investigation into dependent adult abuse incident(s), founded and/or unfounded, regarding Larry Tielebein.

Iowa Protection & Advocacy Services, Inc. is authorized to receive this information and to keep such information confidential under the following overriding federal statutes: Developmental and Disabilities Assistance and Bill of Rights Act of 2000, Pub.L. 106-402, 2000, § 1809, 114 Stat 1677, 1714 [to be codified at 42 U.S.C. § 15043 (a)(1)(J)]; 45 CFR § 1386.22 (b)(2) (2000); 45 CFR § 1316.21 (f) (2000); 45 CFR § 1386.22 (e) (2000); 42 U.S.C. § 10806 (2000); 42 U.S.C. § 10805 (2000); 42 CFR § 51.41 (2000); 42 CFR § 51.31 (i) (2000); 42 CFR § 51.45 (2000).

3015 Merle Hay Road • Suite 6 • Des Moines, Iowa 50310-1270 • Telephone Number: 515-278-2502 • Toll Free: 1-800-779-2502
FAX: 515-278-0539 • TTY 515-278-0571 • E-Mail: info@ipna.org
*A federally-funded program to defend and promote the human and legal rights of Iowans who have disabilities and mental illness.*

**EXHIBIT**

In addition, we are identified and authorized under Iowa Code Chap. 135C.2 (4) (2001).

Please acknowledge this authority and comply with this request by mailing or delivering the complete written information/reports within twenty-four (24) hours, as provided for under Pub.L. 106-402, 2000, § 1809, 114 Stat 1677, 1714 [to be codified at 42 U.S.C. § 15043 (a)(1)(J)(ii)] to:

Iowa Protection & Advocacy Services, Inc.
3015 Merle Hay Rd., Suite 6
Des Moines, IA 50310

Alternately, you may fax the information to 515-278-0539.

We look forward to your prompt response.


Sincerely,


Nancy Trotter                           Nancy Gilbert
Attorney-at-Law                         Case Advocate



cc:  Sylvia Piper, Executive Director, Iowa P&A
     Ronda Bennett, Dept. Inspections and Appeals



**STATE OF IOWA**

THOMAS J. VILSACK, GOVERNOR
SALLY J. PEDERSON, LT. GOVERNOR

DEPARTMENT OF HUMAN SERVICES
JESSIE RASMUSSEN, DIRECTOR
**Woodward Resource Center**
Michael J. Davis, Ph.D., Superintendent

July 23, 2001

Nancy Gilbert, Case Advocate
Iowa Protection and Advocacy
3015 Merle Hay Road, Suite 6
Des Moines, IA 50310

Dear Ms. Gilbert:

Your letter of July 6, 2001 requests access to the final report of the investigation of an incident at the Woodward Resource Center. Pursuant to 42 U.S.C. § 6042(f) you are entitled to access to records of an agency or person "charged with investigating reports of incidents of abuse or neglect, injury or death occurring at [a] facility...." As you are aware, your own agency as well as the Department of Inspections and Appeals and the county medical examiner are the entities statutorily charged with investigating incidents of abuse, neglect and death at the Woodward Resource Center. *See,* Iowa Code §§ 135C.38, 135B.9, and 222.12. Because the Department of Human Services is not the agency charged with investigating abuse, neglect or death at the Woodward Resource Center, Protection and Advocacy (P & A) is not entitled to the records of the investigation.

P & A does have statutory access to "reports prepared or received by any staff of a facility rendering care or treatment." 42 U.S.C. § 6042(f). In that regard you have been given full access to the patient records on the individual at issue, you may interview any employee or client, and you have full access to the Woodward campus and staff. Woodward has thus provided P&A with all the access that it is legally authorized to provide.

I would like to cooperate with you in your review of this incident. Please let me know if there are other ways I can help.

Sincerely,

Michael J. Davis
Superintendent

*"Supporting Individuals and Communities Where All Belong"*
1251 334ᵗʰ Street, WOODWARD, IOWA 50276 / 515-438-2600

#477-1400
Revised (6/14/00)



**EXHIBIT**
F

# IOWA PROTECTION AND ADVOCACY SERVICES, INC.

*Celebrating 15 years of service to*
*Iowans with disabilities.*

July 30, 2001

**FILE COPY**

Michael Davis, Administrator
Woodward Resource Center
1251 334th Street
Woodward, IA 50276

Dear Mr. Davis,

On July 6, 2001, Nancy Gilbert, Iowa Protection and Advocacy Rights Advocate, sent a letter to you requesting two things: an update on the status of your internal investigation into the death of Mr. Larry Teilebein; and a copy of your final report into Mr. Teilebein's death, if such report has been completed.

On July 24, 2001, our office received a reply from you which did not address our first inquiry. Furthermore, you informed us that it was your belief that you do not have to provide Iowa Protection and Advocacy with a copy of your internal report.

Again we ask that you please provide us with a status update on the investigation into Mr. Teilebein's death and a copy of your investigation report. The foundations for this renewed request follow.

In your letter of July 23, 2001, you state that 42 U.S.C. § 6042(f) (1984) grants Iowa Protection and Advocacy access to the records requested. However, 42 U.S.C. § 6042 (1984) was repealed in October of 2000, along with all other portions of Chapter 75 of Title 42 of the United States Code. The Disabilities Assistance and Bill of Rights Act of 2000, codified as 42 U.S.C. § 15001 et seq. (2000), replaces the former act, codified as 42 U.S.C. § 6000 et seq. (1984). This new act gives Iowa Protection and Advocacy the authority to investigate reported incidents of abuse and neglect. See, 42 U.S.C. § 15043(a)(1)(A) (2000).

The Code of Federal Regulations defines abuse, in part, as "any act or failure to act . . . which caused, or may have caused, injury or death . . . ." 45 C.F.R. § 1386.19 (2001). The Code of Federal Regulations defines neglect, in part, as "a negligent act or omission . . . which caused injury or death . . . ." Id. As such, the relevant Federal statutes and regulations give Iowa Protection and Advocacy authority to investigate Mr. Teilebein's death.

The Code of Federal Regulations gives Iowa Protection and Advocacy access to "[r]eports prepared by an agency charged with investigating incidents of abuse and neglect, injury or death occurring at a facility . . . that describe . . . abuse, neglect, injury, [or] death . . . ." 45 C.F.R. § 1386.22(b) (2001). This is consistent with the statute that you quoted in your letter.

However, The Code of Federal Regulations also gives Iowa Protection and Advocacy access to "[r]eports and records, including personnel records, prepared or maintained by

3015 Merle Hay Road • Suite 6 • Des Moines, Iowa 50310-1270 • Telephone Number: 515-278-2502 • Toll Free: 1-800-779-2502
FAX: 515-278-0539 • TTY 515-278-0571 • E-Mail: info@ipna.org
*A federally-funded program to defend and promote the human and legal rights of Iowans who have disabilities and mental illness.*

**EXHIBIT**

that facility in connection with such reports of incidents [of abuse, neglect, death or injury] . . . including all information and records which describe persons who were interviewed, physical and documentary evidence . . . and related investigative findings . . . ." 45 C.F.R. § 1386.22(b)(2)(iii) (2001). This section clearly indicates that Iowa Protection and Advocacy has access to your internal reports, all other external reports and investigations notwithstanding.

You mention in your letter of July 23, 2001, several sections of the Iowa Code that delineate who is charged by the state with the investigations of deaths, injuries, abuse and neglect at state institutions. Iowa Code § 222.12 (2001) relates to Medical Examiner's investigations and reports. When Iowa Protection and Advocacy wants a Medical Examiner's report, Iowa Protection and Advocacy contacts the Medical Examiner.

You cite Iowa Code § 135C.37 (2001). This section authorizes investigations by the Iowa Department of Inspections and Appeals. As per the sections of United States Code mentioned above, we do have the right to access reports generated by the Department of Inspections and Appeals. However, we are not asking you to give us the Department of Inspections and Appeals report, we are requesting your report.

You cite Iowa Code § 135B.9 (2001). This section does authorize Iowa Protection and Advocacy to investigate all complaints of abuse and neglect. This section further authorizes Iowa Protection and Advocacy to examine "all records pertaining to the care provided to the residents . . . ." Iowa Code § 135B.9 (2001). The report of your internal investigation into the death of a resident of your facility is a record "pertaining to the care provided to the [resident] . . . ." Iowa Code § 135B.9 (2001).

The Code of Federal Regulations states that "[a] Protection and Advocacy System may exercise its authority under State law where the authority exceeds the authority required by the Developmental Disabilities Assistance and Bill of Rights Act. However, State law must not diminish that required authority of the Protection and Advocacy System." 45 C.F.R. § 1386.21(f) (2001).

Both state and federal law grant Iowa Protection and Advocacy access to the information requested. We therefore renew our request that you provide us with an update on your internal investigation into Mr. Teilebein's death and a copy of your internal report. We appreciate your continued cooperation and appreciate your efforts to comply with the applicable laws. If you have any questions or concerns please feel free to call either Sharon Yon or Nancy Trotter.

Sincerely,

Sharon Yon
Staff Attorney

Nancy A.S. Trotter
Nancy Trotter
Staff Attorney

cc: Sylvia Piper, Executive Director, Iowa Protection and Advocacy Services, Inc.





THOMAS J. MILLER
ATTORNEY GENERAL

**Department of Justice**

ADDRESS REPLY TO:
HOOVER BUILDING
DES MOINES, IOWA 50319
TELEPHONE: 515/281-5164
FACSIMILE: 515/281-4209

September 4, 2001

Nancy Trotter
Nancy Gilbert
Iowa Protection & Advocacy Services, Inc.
3015 Merle Hary Road, Suite 6
Des Moines, IA 50310-1270

Dear Ms. Trotter & Ms. Gilbert:

My apologies for taking so long to reply to your letter regarding Woodward Resource Center, but you listed a number of statutes which I needed to research before replying. I have now had time to read through all the regulations you list, and I see no authority that supersedes the Iowa Code prohibition against releasing unfounded dependent adult abuse reports to protection and advocacy services. The federal statutes you cite set forth the protections afforded but do not expressly state that your agency is entitled to unfounded reports of dependent adult abuse. In addition, the state law you cited, Iowa Code §135C.2(4) (2001), discusses the creation of your agency, but does not confer specific authority to override the prohibition set forth in Iowa Code §235B.6(3).

Iowa Code §235B.6(3) states "[a]ccess to unfounded dependent adult abuse information is authorized only to those persons identified in subsection 2
- paragraph "a"
  [victim, guardian, guardian ad litem, perpetrator, perpetrator's counsel]
- paragraph "b," subparagraphs 2 and 6
  [agent of the DIA, mandatory reporter who reported the abuse]
- paragraph "e," subparagraph 2
  [registry personnel]

As you can see from the foregoing list, protection and advocacy are expressly excluded from those who may have access to unfounded dependent adult abuse reports. Therefore, we are forbidden under state law from providing the information you requested.



**EXHIBIT**

H

Sincerely,

MELISSA BIEDERMAN
Assistant Attorney General
TEL: (515) 281-4669
FAX: (515) 281-7551

cc: Ronda Bennett, Health Facilities

# IOWA PROTECTION AND ADVOCACY SERVICES, INC.

*Celebrating 15 years of service to
Iowans with disabilities.*

September 11, 2001

Melissa Biederman
Assistant Attorney General
Iowa Department of Justice
Hoover State Office Building
Des Moines, Iowa 50319

Dear Ms. Biederman,

Thank you for your letter of September 4, 2001. I am writing to give you further
clarification on the authority of Iowa Protection & Advocacy Services, Inc. to access the
records in question.

The Code of Federal Regulations gives Iowa Protection and Advocacy access to
"[r]eports and records, including personnel records, prepared or maintained by that
facility in connection with such reports of incidents [of abuse, neglect, death or injury]
. . . including all information and records which describe persons who were interviewed,
physical and documentary evidence . . . and related investigative findings . . . ."   45
C.F.R. § 1386.22(b)(2)(iii) (2000). This section clearly indicates that Iowa Protection
and Advocacy has access to the internal reports we have requested.

In your letter you assert that Iowa Code § 235B.6 prohibits Iowa Protection & Advocacy
access to the records we have requested. The Code of Federal Regulations states that "[a]
Protection and Advocacy System may exercise its authority under State law where the
authority exceeds the authority required by the Developmental Disabilities Assistance
and Bill of Rights Act. However, State law must not diminish that required authority of
the Protection and Advocacy System." 45 C.F.R. § 1386.21(f) (2000).

It is the required authority of Iowa Protection & Advocacy to fully investigate all alleged
incidences of abuse or neglect of persons with disabilities. 42 U.S.C. § 15043(a)(2)(b)
(2000). The reports that Iowa Protection & Advocacy has requested are necessary to an
investigation of a suspected incidence of abuse or neglect. A full investigation of an
incidence of abuse or neglect is a part of the required authority of Iowa Protection &
Advocacy.

3015 Merle Hay Road • Suite 6 • Des Moines, Iowa 50310-1270 • Telephone Number: 515-278-2502 • Toll Free: 1-800-779-2502
FAX: 515-278-0539 • TTY 515-278-0571 • E-Mail: info@ipna.org
*A federally-funded program to defend and promote the human and legal rights of Iowans who have disabilities and mental illness*

**EXHIBIT**

Melissa Biederman
Assistant Attorney General
September 11, 2001
Page 2


Therefore, the bar that you assert Iowa Code § 235B.6 places before Iowa Protection &
Advocacy access to the records we have requested is nullified by Federal law and the
Supremacy Clause of the United States Constitution. U.S. Const. art. VI, cl. 2. As access
to these records is granted to Iowa Protection & Advocacy by federal law, we request that
you comply with the requirements of the law and release the aforementioned records to
Iowa Protection & Advocacy without further delay. Your cooperation is appreciated.

Sincerely,

Sylvia Piper
Executive Director


cc: Sharon Yon, Staff Attorney

September 13, 2001

Gordon Allen
Deputy Attorney General
Iowa Department of Justice
Hoover State Office Building
Des Moines, Iowa 50319

Dear Mr. Allen

On August 15, 2001, you attended a meeting which John Winkelman, President, Iowa P&A Board and I had scheduled with Jessie Rassmussen to discuss issues relating to access to Iowa DHS facilities, facility residents and records. During the course of that meeting you informed us that you had directed Michael Davis to refuse Iowa P&A's request for a copy of the internal investigation conducted at Woodward State Hospital-School in the Larry Tielebein death. Another representative from the Iowa Attorney General's office, who was also present, cited 42 C.F.R. § 51.41 as a basis for refusal to produce the requested information. I am writing to give you information on the authority of Iowa Protection and Advocacy Services, Inc. Additionally, I am enclosing a copy of a letter sent to Melissa Biederman which also addresses our authority in this regard.

Iowa Protection & Advocacy Services, Inc. derives its authority under the Developmental Disabilities Assistance and Bill of Rights Act of 2000, 42 U.S.C. § 15001 et seq. and the Protection and Advocacy for the Mentally Ill Act of 2000, 42 U.S.C. § 10801 et seq.

The Developmental Disabilities Assistance and Bill of Rights Act of 2000 requires the Secretary of the United States Department of Health and Human Services to promulgate regulations necessary for the implementation of the Act no later than one year after the enactment of the Act. 42 U.S.C. § 15004(b) (2000). The Act became law on October 30, 2000. As yet, no new regulations have been promulgated. The most relevant current Federal regulations that can be used in conjunction with the Developmental Disabilities Assistance and Bill of Rights Act of 2000 are found in 45 C.F.R. § 1386.1 et seq. These regulations were promulgated in 1996 and were to be concomitant with the now repealed Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C. § 6000 et seq. (1984).

Protection and Advocacy for the Mentally Ill Act of 2000, 42 U.S.C. § 10801 et seq. is accompanied by regulations found in 42 C.F.R. 51.1 et seq. These regulations incorporate by reference, parts of the Regulations for the Developmental Disabilities Assistance Act. However, they do not control the Developmental Disabilities Assistance Act, as they were written for, and are generally applicable to, the Protection and Advocacy for the Mentally Ill Act. The United States Supreme Court has held that


EXHIBIT

federal "regulations, in order to be valid must be consistent with the statute under which they are promulgated." United States v. Larionoff, 431 U.S. 864, 873 (1977). The regulations found in 42 C.F.R. § 51.1 et seq. are arguably valid, as they are not entirely inconsistent with the statute under which they were promulgated. However, they were promulgated under 42 U.S.C. § 10826(b) (1991) – part of the Protection and Advocacy for the Mentally Ill Act, not the Developmental Disabilities Assistance Act. Only regulations promulgated under the Developmental Disabilities Assistance and Bill of Rights Act of 2000, codified as 42 U.S.C. § 15001 et seq. can be argued as valid in issues related to the Developmental Disabilities Assistance and Bill of Rights Act of 2000. As the Secretary of Health and Human Services has not promulgated regulations for the Developmental Disabilities Assistance and Bill of Rights Act of 2000. Considering this fact, it is most practical to apply the Regulations for the Developmental Disabilities Assistance Act of 1984 to the current Act, but only to the extent that the old regulations do not conflict with the current Act.

Under the current Developmental Disabilities Assistance and Bill of Rights Act, Iowa Protection & Advocacy Services, Inc. has broad access to: facilities that serve persons with developmental disabilities, developmentally disabled residents of facilities residents' records, facility records, and facility staff. 42 U.S.C. § 15043 (2000). Furthermore, Iowa Protection & Advocacy Services, Inc. has access to the reports and findings of investigations of facilities done by the facility and by third parties. 42 U.S.C. § 15043 (2000).

Under the current Protection and Advocacy for Individuals with Mental Illness Act, Iowa Protection & Advocacy Services, Inc. has broad access to: facilities that serve persons with developmental disabilities, developmentally disabled residents of facilities residents' records, facility records, and facility staff. 42 U.S.C. § 10805 (2000). Furthermore, Iowa Protection & Advocacy Services, Inc. has access to the reports and findings of investigations of facilities done by the facility and by third parties. 42 U.S.C. § 10805 (2000).

The provisions of these two acts are similar, but the Developmental Disabilities Assistance and Bill of Rights Act of 2000, allows agents of Iowa Protection & Advocacy Services, Inc. immediate access to the records of facility residents at any time that Iowa Protection & Advocacy Services, Inc. agents determine that they have probable cause to believe that the resident(s) are in imminent danger of abuse or neglect. 42 U.S.C. § 15043(a)(2)(J) (2000). In such instances Iowa Protection & Advocacy Services, Inc.

agents are not required to obtain guardian consent or to provide a guardian notice in order to view a resident's records. 42 U.S.C. § 15043(a)(2)(J) (2000).

With this communication and the communication to Melissa Biederman, we again request copies of the internal investigations in Larry Tielebein's death from both Woodward State Hospital-School and the Iowa Department of Inspections and Appeals.

It was nice having the opportunity to meet you and look forward to continued conversation in these matters. We will be sending you a draft agreement, for discussion purposes, within the next week.

Sincerely,



Sylvia Piper
Executive Director


Enclosure


cc: John Winkelman, President
    Iowa P&A Board of Directors

    Jesse Rasmussen, Executive Director
    Iowa Department of Human Services

    Sharon Yon, Attorney at Law
    Iowa P&A

# IOWA DEPARTMENT OF
# INSPECTIONS & APPEALS



THOMAS J. VILSACK
GOVERNOR

SALLY J. PEDERSON
LT. GOVERNOR

KEVIN W. TECHAU, DIRECTOR

October 4, 2001

Ms. Sylvia Piper
Executive Director
Iowa Protection and Advocacy Services
3015 Merle Hay Road
Des Moines, IA 50310

Dear Ms. Piper:

I appreciated the opportunity to discuss the role and responsibility of the Health Facilities Division of DIA at your recent Board of Directors meeting. Obviously, our two organizations have an awesome responsibility in protecting the safety and security of individuals served in Iowa's licensed healthcare facilities. Of course, I appreciate your special responsibility in addressing the needs of individuals with developmental disabilities or mental illness.

I understand a request has been made concerning one of our investigations. If I am not mistaken your inquiry was addressed to our Assistant Attorney General representative, Melissa Biederman. My comments will incorporate her response. In responding to this request, I want to follow up on our discussion that our two agencies can be mutually supportive as we each serve our unique responsibilities. As I suggested following the Board meeting, two independent investigations of an incident, when delivered publicly, could have a much greater impact in correcting egregious situations. Independent investigations make it more likely for the findings of deficient care to be sustained and for those problems to be corrected.

While there is great benefit in each agency conducting its own investigations there is also no reason that certain portions of P&A's investigative activities could not be combined with DIA's. For instance, DIA has undertaken joint interviews with P&A in the past, as it would be a waste of time and efforts to conduct two separate interviews with the same staff on the same issue. DIA can also make available to P&A any public documents (2567L, death certificates, etc.) collected.

The applicability of independent investigation is especially important since there would have to be specific statutory authority granting P&A access to DIA files, not just to the facility's public records. There is no such statute. Chapter 135C expressly limits the dissemination of investigation information only to the facility and only in the context of a contested case. Chapter 135C.17 contains an express limitation that requires DIA to cooperate with reasonable requests for information only "as required by federal law and this chapter." Subsequently, if P&A desires information regarding treatment, care and alleged abuse that cannot be gleaned from a joint interview or from public documents, it must gather the material through its own investigation.

LUCAS STATE OFFICE BUILDING, 321 EAST 12TH STREET, DES MOINES, IOWA 50319-0083 • TTY: (515) 242-6515

| ADMINISTRATION | ADMINISTRATIVE HEARINGS | AUDITS | HEALTH FACILITIES | INSPECTIONS |
|---|---|---|---|---|
| (515) 281-5457 | (515) 281-4843 | (515) 242-5109 | (515) 281-4115 | (515) 281-5686 |
| FAX: (515) 242-6863 | FAX: (515) 281-4477 | FAX: (515) 281-3291 | FAX: (515) 242-5022 | FAX: (515) 281-3291 |

**EXHIBIT**




However, this information does not mean the two agencies cannot be mutually supportive. I am confident our two agencies' efforts will be synergistic as we seek to enhance the safety and security of those who are dependent within our communities. Please give me a call so we can schedule a time to visit informally about our dual responsibilities.

Sincerely,

Marvin L. Tooman, Ed.D.
Administrator
Tel: 515-281-4233
E-Mail: mtooman@dia.state.ia.us

cc: Melissa Biederman, Assistant Attorney General
    Kathy Sutton, Long Term Care Bureau I, DIA
    Paul Vanderburgh, Long Term Care Bureau II, DIA

October 13, 2001

Gordon Allen
Deputy Attorney General
Iowa Department of Justice
Hoover State Office Building
Des Moines, Iowa 50319

Dear Mr. Allen:

Please consider this communication a follow-up to my September 13, 2001 letter to you (copy enclosed). I have not received a response from you and, within the September 13th letter, we again requested copies of Woodward State Hospital-School's and the Iowa Department of Inspections and Appeals internal investigations of Larry Tielebein's death. Neither have I received a response from Melissa Biederman to my September 11, 2001 letter to her.

During our August 15, 2001 meeting with you, you indicated that it was upon your direction that the records were not given to Iowa Protection & Advocacy Services, Inc. We agreed to provide you with detailed information regarding the reauthorized Developmental Disabilities Act which specifies the authority of Iowa P&A to access records. That was given to you in our September 13th letter.

We believe that we are entitled, through our Federal mandate, to access the records within 24 hours of our request. Approximately two months have passed since our first request for the above-referenced records. We would appreciate your cooperation in this matter.

Sincerely,

Sylvia W. Piper
Executive Director

Enclosure

Cc: John Winkelman, President
Iowa P&A Board of Directors

Jesse Rasmussen, Director
Iowa Department of Human Services

Sharon Yon, Staff Attorney
Iowa P&A


**EXHIBIT**

October 19, 2001

Jessie Rasmussen
Executive Director
Iowa Department of Human Services
Hoover State Office Building
Des Moines, IA  50319-0114

Dear Ms. Rasmussen:

Due to an immediate conflict, I find it necessary to ask that we postpone our October 25, 2001 meeting.

As you know, we have been awaiting a response from Gordon Allen and Melissa Biederman, Iowa Attorney General's Office, to several letters we have written requesting records pertinent to Iowa P&A's investigation in the death of Larry Tielebien in March, 2001 at the Woodward Resource Center.  The records, according to the reauthorized Developmental Disabilities Act, should have been provided to us within 24 hours.  There have been several requests for those records over the past several months to Michael Davis, Superintendent, Woodward Resource Center; the Iowa Department of Inspections and Appeals; the Iowa Attorney General's office and to your attention at the Iowa Department of Human Services.

While Iowa P&A staff is aware that Larry Tielebien's death has been ruled a homicide and, to our awareness as of this communication, no charges have been filed, it is nonetheless necessary that we fulfill our mandate and complete our investigation.  Therefore, we again request that the records from the internal investigation at Woodward be provided to Iowa P&A.

During our meeting with you on August 15th we again stated that we would prefer to fulfill Iowa P&A's responsibilities in accord with Iowa DHS.  Gaining greater understanding of purpose through our meetings is welcomed by this agency.  However, we are not in a position to negotiate our mandate --- we must fulfill our mission.

I look forward to receiving the records which we have requested.

Sincerely,

Sylvia W. Piper
Executive Director

Cc: John Winkelman, President
Iowa P&A Board of Directors

EXHIBIT



# STATE OF IOWA

THOMAS J. VILSACK, GOVERNOR
SALLY J. PEDERSON, LT. GOVERNOR

DEPARTMENT OF HUMAN SERVICES
JESSIE K. RASMUSSEN, DIRECTOR


NOV 1 9 2001


RECEIVED
NOV 2 0 2001
IA. PROTECTION & ADVOCACY SERVICES, INC.

Sylvia Piper, Executive Director
Iowa Protection and Advocacy Services, Inc.
3015 Merle Hay Road, Suite 6
Des Moines, IA 50310-1270

Dear Sylvia:

I received your letter of October 19, 2001, regarding postponement of our October 25, 2001, meeting and your request for records from the Woodward State Resource Center.

This has been a hectic time for the Department of Human Services as we develop our plans to implement the 4.3% across-the-board reduction. So it was actually helpful to me as well to have our meeting rescheduled. I believe Karalyn Kuhns has already contacted you and rescheduled the meeting date to November 29, 2001, from 1:00 p.m. – 2:30 p.m. in the Cabinet Room here at the Hoover Building. Please contact Karalyn at 281-6003 if this time does not work for you and she can arrange an alternate date.

As for your request for the "internal investigation", I think it would be appropriate to define what it is you are seeking, that you have not yet obtained. I believe you have received all the documents regarding the DIA investigation, the coroner's investigation, and other outside agencies. If that is not correct, please let me know. The documents still at issue are the Randall Hines report (dealing with the restraint issues at both facilities, not just Larry Tielebein) and what has been termed the 'mortality review' by the WRC professional staff, and the minutes of the meeting which generated that report. I also believe you have received the 'review', and if that is not correct, please let me know. Gordon Allen has already indicated the Hines report and the minutes of the meeting that generated the professional report, were prepared at his request in anticipation of potential litigation with the DOJ, and is therefore considered to be attorney-client communication. As you are aware, information of this nature is considered to be confidential and the Department has up to this point determined not to waive the privilege attached.

I hope if you have further questions we can bring them to the table at the next meeting and discuss the issues from both sides.

Sincerely,

Jessie K. Rasmussen
Director

JKR/kk

Cc:    Sally Titus Cunningham, Deputy Director for Field Operations
       Michael J. Davis, Ph.D., Superintendent WRC
       Gordon Allen, Deputy Attorney General

**EXHIBIT**

N

tabbies